Christopher S Bennett
3518 W. 118th St.
Inglewood, California 90303
Tel: 424/380-8613

In Pro Per

# UNITED STATES FEDERAL COURT

## CENTRAL DISTRICT OF CALIFONIA

CHRISTOPHER S BENNETT, Caretaker
for GRACE M BAILEY

Plaintiff,

V.

DANIEL JUAREZ, individually and in his
personal capacity; MICHELE L
ABERNATHY, individually, WILLIAM
CECIL PRICE, individually, JEROME P
LISK, individually, LISA BAILEY-CARR,
individually, DANNIE WATSON,
individually, MARY WINNERS,
individually GIFFORD, DEARING &
ABERNATHY, LLP, individually, JOHN
and JANE DOES 1-10

Defendants.

Case No 2:25cv00930-AH-(JDEx)

**COMPLAINT**

**Trial by Jury Demanded**

Plaintiff Christopher S Bennett ("Bennett") hereby alleges, as and for his Complaint against Defendant Daniel Juarez ("Mr. Juarez"), Defendant Michele L Abernathy ("Ms. Abernathy"), Defendant William Cecil Price ("Mr. Price"), Defendant Jerome P Lisk ("Mr. Lisk"), Defendant Lisa Bailey-Carr ("Ms. Carr"), Defendant Dannie Watson ("Ms. Watson") Defendants Mary Winners ("Ms. Winners"), Defendant Gifford, Dearing & Abernathy, LLP ("GDAL"), John and Jane Does 1-10 as follows:

## JURISDICTION AND VENUE

1. This Court has personal jurisdiction over the Defendants under and consistent with the

1

Constitutional requirements of Due Process in that Defendants, acting directly or through his agents or apparent agents, committed one or more of the following:

    a. The transaction of any business within the state or any other state;

    b. The making of any contract within the state or any other state;

    c. The commission of tortious act within this district and

    d. The elder financial exploitation and abuse within the state or any other state.

2. From February 2024 to the date of this filing, Defendants have consistently and purposefully availed themselves of the privilege of conducting activities within California, thus invoking the benefits and protections of California law. In return for these benefits and protections, Defendants must submit to the burdens of litigation in California.

3. This litigation arises from or relates to the tortious activity's defendants visited upon defendants in the states of California, Kansas, Texas and the United States of America.

This conduct violated United States Federal Rico Laws.

4. Requiring Defendants to litigate these claims in this District does not offend traditional notions of fair play and substantial justice. Plaintiffs' claim arises from some conduct occurring by Defendants in California.

### PARTIES

5. Plaintiff Christopher S Bennett, natural born Californian, caretaker for the elderly, Grace M. Bailey and lives in the state of California.

6. Defendant Daniel Juarez, is an individual with his address of 111 N. Hill Street Los Angeles, CA 90012.

7. Defendant Michele L Abernathy, is an individual with her address of 515 S. Figueroa St. Ste. 2060 Los Angeles, CA 90071.

8. Defendant William Cecil Price, is an individual with his address of 555 E Ocean Blvd Ste 501 Long Beach, CA 90802.

9. Defendant Jerome P Lisk, is an individual with his address of 3120 Medpark Dr. Suite 100 Denton, TX 76208.

2

10. Defendant Lisa Bailey-Carr, is an individual with her address of 12217 Merion Drive Kansas City, KS 66109.

11. Defendant Dannie Watson, is an individual with her address of 718 Rolling Ridge Lane Duncanville, TX 75116.

12. Defendant Mary Winners, is an individual with her address of 525 S Myrtle Ave Suite 218 Monrovia, CA 91016.

13. Defendant Gifford, Dearing & Abernathy LLP, is a partnership with an address of 515 S. Figueroa St. Ste 2060 Los Angeles, CA 9007.

## SUMMARY OF EVENTS

14. From February 2024 to January 2025, Ms. Carr and Ms. Watson assisted each other in taking, secreting, appropriating, obtaining real or personal property of an elder or dependent adult for wrongful use and with the intent to defraud.

15. Ms. Watson received a letter dated February 14, 2024 from the Social Security Administration located at 601 East Twelfth Street, Kansas City Missouri 64106.

16. The letter read that we have chosen DANNIE WATSON to be your representative payee. We are sending your regular monthly check of $1900.60 to DANNIE WATSON around MARCH 20, 2024.

17. Ms. Carr and Ms. Watson has secured irrefutable evidence of:

a. The conversion and theft of SSI benefits without the consent of the elderly;

b. The wrongful disclosure of an individual identifiable health information to unknown persons without her consent (Grace Bailey);

c. The creation of a false will and trust in an elaborate attempt to take, secrete, appropriate all assets in the estate of an elder, Grace Bailey;

d. Ms. Carr and Ms. Watson falsified, documents to the SSA, concealed it, covered it up by trick or scheme and have siphon a total of $22,800.72 from Grace Bailey's SSI benefits;

e. Utilizing a notary in June 2015 who had no public journal; to grant them POA over their aunt

3

Grace Bailey in order to facilitate their secret agenda, to gain *conservatorship* over their aunt; and assisted each other in taking, secreting, obtaining real property or personal property of their aunt an elder for wrongful use and unjust enrichment.

18. On March 5, 2024 Ms. Carr filed a petition for appointment of temporary conservator (Person and Estate in the Superior Court of California Case No. 24STPB01975.

19. On March 21, 2024 Sam Bailey informed SSI that Grace M Bailey did not request Ms. Watson to be her representative payee and she was not given permission, authorization or consent to become her payee.

20. The document entitled "ADVANCE HEALTH CARE DIRECTIVE OF GRACE M BAILEY" dated June 11, 2015 was a fraudulent document submitted to the court by Ms. Abernathy. The notary Steve Hunter (2065378), failed to use a notary journal when executing the document, thus violating Government Code section 8206(a), and Civil Code section 1185, rendering that document as void ab initio.

21. On August 14, 2024 Don Bushell, Attorney at Law exposes the fraudulent trust and will that was shrouded in secrecy by Ms. Carr and Ms. Abernathy, until a Los Angeles Judge ordered the fraudsters to produce said documents.

22. On December 20, 2024 Ms. Abernathy, knowingly submitted to the court a document marked Exhibit A dated 11/14/2023 titled DETERMINATION OF CAPACITY BY LICENSED PHYSICIAN without the hospitals letter head that proven to be a false writing or document knowing the same to contain materially false, fictious or fraudulent statement or entry.

23. On December 23, 2024 Mr. Lisk knowingly filed a capacity declaration-conservatorship under penalty of perjury that he saw Grace M Bailey in California from his office located in Denton Texas. Mr. Lisk used a false writing or document knowing the same to contain any materially false, fictious or fraudulent statement or entry and Ms. Abernathy, knowingly and willfully filed electronically with the court knowing that false, fraudulent statement is frivolous and that the court would rely on the false document in order to place Grace M Bailey in a residential care facility in another state without her consent based upon lie; false report where the doctor couldn't

4

remember his zip code, thus causing fraud upon the court.

24. Ms. Abernathy has secured irrefutable evidence of:

a. Fraud upon the court;

b. The falsifying, conceal, cover up by any tricks, scheme, device, using false writings or documents knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

c. Ms. Abernathy knowingly provided a false doctors declaration to the Superior Court of California (Stanley Mosk) dated December 23, 2024;

d. Ms. Abernathy has committed criminal acts and/or has engaged in conduct involving dishonesty, fraud, deceit and intentional misrepresentation of SSI funds, that raises a question as to her honesty, integrity, and trustworthiness as an attorney;

e. Ms. Abernathy knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law;

f. Ms. Abernathy has violated the rules of professional conduct, knowingly assisted her client Ms. Carr in criminal acts regarding financial abuse of an elder or dependent.

g. Blatant disregard for her oath of office;

h. Failure to protect the elderly from harm.

25. On January 14, 2025 Bennett submitted evidence of fraud upon the court, fraud, elder abuse, financial exploitation abuse of Grace M Bailey, orchestrated and spearheaded by her niece Ms. Carr, Ms. Watson, Ms. Abernathy and Mr. Lisk.

26. Mr. Juarez secured irrefutable evidence of:

a. Systemic bias against a particular class of people, gender and the disparate treatment of pro per litigants based upon their race or perceived status;

b. The assisting in fraud upon the court by participating as a co-conspirator in profiting from the exploitation of an elderly adult through fraud, force and coercion; assisting in the theft of property in "trust";

c. Usurping another judicial officer's order;

d. Giving aid and comfort to enemies of the Constitution;

e. Engaging in serious human rights abuse;

f. Blatant disregard for his oath of office;

g. Emolument violations, by utilizing his position of power for illicit profit or gain;

h. Ignored evidence code section 403, 1200 and 1271;

j. Abuse of discretion and taking advantage of his wrongs towards a pro per litigant;

k. Failure to protect the elderly from harm;

l. The equal application of justice did not matter to Mr. Juarez.

27. Mr. Juarez knowingly decided on the basis of argumentation and not facts presented to the court by a competent witness; no court of record; *unlawfully and without authority*, suspended all estate planning documents, procured on or after January 1, 2023 when those documents provided prima facie evidence of ("trust") violations, elder financial exploitation, embezzlement of SSI benefits of the elderly, identity theft and HIPPA violations.

28. Mr. Juarez willfully allowed and used falsified, fictitious, or forged statements/documents presented by Ms. Abernathy, in determining his baseless decision to grant temporary conservatorship to Ms. Carr, over Grace M Bailey without her consent.

29. On December 12, 2024 Ms. Winners called Bennett and stated that she was 15 minutes away and would like to speak with Bennett and go over a few things concerning Grace M Bailey.

30. Ms. Winners arrived approximately 35 minutes later and stated that she was waiting for her assistant to keep Grace Bailey company.

31. Ms. Winners failed to notify Bennett that Ms. Watson and her brother would be attending the meeting. Ms. Winners told Bennett since the passing of Sam Bailey, Ms. Carr is now the conservator and that the "Self-Executing Appointment as Executor/Conservator/Guardian that Sam Bailey and Bennett executed before a notary was not valid.

32. Ms. Winners stated that Bennett has no standing, no authority and its is not enforceable, and that Ms. Carr is going to petition the Court for another court date.

33. Ms. Winners and Ms. Watson forcibly demanded that Bennett turn over all banking,

6

information, cell phones, keys, passwords etc. Bennett asked Ms. Winners and Ms. Watson was this a court order? Ms. Watson stated "I don't need one I have conservatorship over Grace Bailey."

34. Ms. Winners has secured irrefutable evidence of:

a. Impersonating an officer of the superior court (Commissioner) and/or attorney;

b. Unethical behavior displayed towards a caregiver of a dependent adult;

c. Knowingly making statements that are false, misleading and/or deceptive;

d. Wrongful disclosure of individual identifiable health information;

e. Complicit with others in elder abuse and financial exploitation of an elder or dependent adult.

35. Mr. Price was provided with evidence of *conservatorship* fraud against the elderly Grace Bailey. Mr. Price failed to inform the State Bar, or a tribunal with jurisdiction to investigate or act upon such misconduct when he was provided with credible evidence of another lawyer, attorney criminal acts or conduct involving the violation of the rules of professional conduct.

36. Mr. Price has secured irrefutable evidence of:

a. Failure to ensure the safety and well-being of the elderly as an officer of the court;

b. Breach of fiduciary duties to an elderly person;

c. Lack of integrity honor and courtesy in the legal professional;

d. Willful participant in the unclean hands' doctrine;

e. Engaging in conduct that is prejudicial to the administration of justice;

f. Using any false writing document knowing the same to contain any materially false, fictitious or fraudulent statement or entry;

g. Giving aid and comfort to enemies of the Constitution;

37. As the spearhead of (GDAL) Defendant Abernathy was instrumental in organizing and executing the RICO Enterprise. Defendant (GDAL) had the following individuals execute the following tasks for the RICO enterprise:

a. **Michele L Abernathy:** Schemes involving the theft of an older adult's assets, funds, or income.

b. **Michele L Abernathy:** Involved in nefarious activities with non-family caregivers who abuse

7

their relationship and position of trust.

c. **Michele L Abernathy:** Theft of real or personal property in "trust"

38. Ms. Abernathy used her affiliation with her partnership in order to file sham petitions for *conservatorship* in the Superior Court of California (Stanley Mosk) based upon false, fictitious, or fraudulent statement or entry in the court registry.

39. Defendant executed their RICO Enterprise with threats of placing the *conservatee* in a residential care facility without her consent.

40. Defendants executed their RICO Enterprise by bribing doctors in to falsifying and issue reports declaring the elderly unable to provide for their needs when there is a willing and responsible family members or friends to help out.

41. Defendants executed their RICO Enterprise by providing gifts, loans, favors or *conservatorship-fixing* to judicial officers whom grant conservatorship based upon materially false, fictitious, or fraudulent statements without deductive reasoning.

### FIRST CAUSE OF ACTION

**RACKETEER INFLUNCED AND CORRUPT ORGANIZATION ACT**
**18 U.S.C. §1962(a)(c)-(d)**
(Against, Defendants Daniel Juarez, Michele L Abernathy, William Cecil
Price, Jerome P Lisk, Lisa Bailey-Carr, Dannie Watson, Marry Winners,
and Gifford, Dearing & Abernathy, LLP)

42. Bennett incorporates by reference all proceeding paragraphs and re-alleges them as if set forth fully herein.

43. As respondent superior, Defendants Daniel Juarez, Michele L Abernathy, Williams Cecil Price, Jerome P Lisk, Lisa Bailey-Carr, Dannie Watson, Mary Winners, and Gifford, Dearing & Abernathy, LLP ("the respondent superior collective") are 100% liable for the actions of Michele L Abernathy, Lisa Bailey-Carr and Dannie Watson as there were acting in their capacities as the respondent superior collectives' employee, clients when they committed the acts

8

detailed below. The respondent superior collective failed to adequately monitor, warn, or supervise the actions of Michele L Abernathy, Lisa Bailey and Dannie Watson.

44. Defendants are individuals and/or entities within the meaning of "person" as defined in 18 U.S.C. § 1961(3) because each is capable of holding, and does hold, "a legal or beneficial interest in property." The partnership is composed of Michele L Abernathy, Gifford, Dearing & Abernathy, LLP, JOHN and JANE DOES 1-10.

45. Section 1962(a) makes it:

unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of Section 2, Title18, United States Code, to use or invest, directly, or indirectly, any part of such income, or proceeds of such income, in the acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce. 18 U.S.C. §1962(a).

46. Section 1962(c) makes it:

unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through pattern of racketeering activity. 18 U.S.C. §1962(c).

47. Section 1962(d) makes it unlawful for "any person to conspire to violate 1962(a) and (c), among other provisions." 18 U.S.C. §1962(d).

48. Defendants are associated with each other as an enterprise within the meaning of "enterprise" as defined in 18 U.S.C. §1961(4).

49. Defendants ("GDAL") is an "enterprise" within the meaning of 18 U.S.C. §§ 1961 & 1962(c), in that its members are "a group of individuals associated in fact"

50. Each RICO Defendant participated in the conduct of the conservatorship and elder financial exploitation statutes.

51. The RICO enterprise, which all Defendants have engaged in, and the activities of which affected interstate and foreign commerce, is comprised of a partnership, in fact, of persons including each Defendant and other unnamed co-conspirators. That partnership, in fact was

structured by various contracts and non-contractual relationship between the Superior Courts of

California (Stanley Mosk) the Defendants, by which Defendants assumed different roles

in agreeing to carry out a mail and wire fraud scheme to acquire SSI benefits of the elder or

dependent adult, real or personal property, in "trust", which this conduct is likely to cause harm

and injury to the elder or dependent adult.

52. The members of the RICO enterprise all share a common purpose: to enrich themselves

financially at the expense of the elderly or dependent adult through fraudulent means. As set forth

herein, Defendant benefitted financially from their scheme defraud the elderly or dependent

adults, by acts of taking, secreting, appropriating, obtaining real or personal property of an elder

or dependent by undue influence and the filing of secret wills and trust without the express or

implied consent of the elderly.

53. Upon information and belief, this RICO enterprise has existed for at least 30 years, dating

back to 1995, engaging in the illegal activities of "Elder Financial Exploitation" and sharing in the

profits by filing, using any false, fictitious, or fraudulent document, statement or entry filed with

the Superior Court of California (Stanley Mosk) structured by various contracts with judicial

officer whom Grant *conservatorship* over an elderly or dependent based upon schemes of artifice

to defraud.

54. The RICO enterprise continued throughout the years, and from February 2024 to the present

day. As evidence by documents filed with the Superior Court of California (Stanley Mosk)

which have been stricken from the record by Mr. Juarez in department 67, who has

participated in a pattern of trickery, false representations and omissions made by Defendants Ms.

Abernathy, Ms. Carr, and Mr. Lisk.

55. The Defendants' scheme was reasonably calculated to deceive the public and defame

Bennett, caretaker for Grace Bailey, through the use of interstate telephone wires, typically

claiming "elder abuse", "terrorist threats" and "disturbance of the peace" to the Inglewood Police

Department, thus using the arm of the law through their complex and illegal scheme to financially

exploit, abuse the elderly and place her in a residential care facility in Kansas or Texas based

upon a materially false, fraudulent declaration of Mr. Lisk, sent electronically to Ms.

Abernathy and submitted to Mr. Juarez as evidence to grant conservatorship over Grace Bailey of

Inglewood, California to Defendant Ms. Carr of Kansas.

56. Defendants each had the specific intent to participate in the overall RICO enterprise and the

scheme to defraud Grace Bailey and each participated in the enterprise as follows:

57. Defendants Ms. Carr, Ms. Watson, Mr. Lisk, Ms. Abernathy, Mr. Price, Ms. Winners,

Mr. Juarez, and GDAL, participated in the activities of the enterprise in a variety of ways as set

forth herein, including but not limited to mail and wire fraud, interstate transportation of stolen

property, exploitation, bribery and kickbacks. Each of these acts was undertaken with the

knowledge and approval of all other Defendants in the furtherance of the goals of their

conspiracy.

58. Beginning at an exact date unknown to Plaintiff, but within nine (9) years preceding the filing

of this action, Defendants Ms. Carr and Ms. Watson have knowingly, willfully, and unlawfully

participated in a pattern of racketeering activity that continues to this day.

59. The acts as below ("Racketeering Act") had the same pattern and purpose to defraud

Plaintiff for the benefit of Defendants. Each Racketeering Act involved the same or similar

method of commission and participants.

60. Without the repeated predicate acts, the ability to conduct their fraud using mail and

telecommunication wires, and the elder financial exploitation, the Defendants' business would not

11

1

have succeeded.

2

61. The separate Racketeering Acts all relate to each other in a way that they were part of

3

concerted actions by Defendants to financially exploit, secrete, obtain real or personal property in

4

"trust" for wrongful use in which the conduct would be harmful to the elder or dependent adult.

5

62. The Defendants' wrongful conduct has caused injury to Plaintiff as a caretaker and protector

6

of Grace Bailey and remains a continuing threat to Plaintiff Bennett, Grace Bailey and the public.

7

63. Defendants' partnership and contract with the Superior Court of California (Stanley Mosk)

8

enabled Defendants to conduct, direct, and control a pattern of fraudulent, illegal activities over a

9

10

substantial number of years, which continues to this day and is the proximate cause of the injuries

11

suffered by Plaintiff.

12

### Mail & Wire Fraud
### 18 U.S.C. §1341 §1343

13

14

64. Defendants voluntarily and intentionally devised and participated in a scheme to defraud,

15

Plaintiff out of money, in reliance on the mail. Defendants committed these acts with the intent

16

to defraud Plaintiff Bennett, caretaker of Grace Bailey.

17

The scheme includes but not limited to:

18

a. Identity theft and conversion of SSI benefits;

19

b. Procuring and offering false or forged instruments to be filed, registered, or recorded in any

20

public office within this state or any other state;

21

c. Using the mail for the purpose of executing the fraudulent scheme herein.

22

65. Defendant could foresee that the U.S. Mail Services and interstate wires would be "used for

23

the purpose of" advancing, furthering, executing, concealing, conducting, participating in or

24

carrying out the scheme, within the meaning of 18 U.S.C. §1341 and §1343.

25

66. Defendants, acting singly and in concert, personally or through their agents, used the U.S.

26

Mail and interstate wires or caused the U.S. Mail or interstate wires to be used "for the purpose

27

of" advancing, furthering, executing, concealing, conducting, participating in, or carrying out a

28

12

scheme to defraud the elderly or dependent adult, within the meaning of 18 U.S.C. §1341 and § 1343.

67. Defendants also required the mail to distribute misleading false, fictitious documents to California and states, including Kansas and Texas. For these reasons, the use of mail to conduct fraudulent activitity was necessary and inevitable.

68. Interstate transportation of stolen property (SSI benefits) was an extension of the scheme to defraud as the wrongfully paid money from Plaintiff to (Defendants Ms. Carr and Ms. Watson) was transported out of the state of California.

69. In furtherance of and for purposes of executing the above-described fraudulent and illegal course of conduct and scheme or artifice to defraud, Defendants, either individually or in combination with themselves, used or caused to be used interstate wire communications to transmit or disseminate false, fraudulent, and misleading communications and information, in violation of the wire fraud statute, 18 U.S.C. §1343.

70. Defendants could not have furthered their fraud without the ability to use telecommunications to share information with clients, law enforcement, social services, those in the medical industry and the Social Security Administration nationwide. Because Defendants needed to communicate with clients and use the arm of the law and social services around the country, the use of interstate telecommunications wires to conduct the fraudulent activity was necessary and inevitable.

71. Plaintiff has been damaged in their business or property because Defendants violated 18 U.S.C. §1962(a), (c)–(d)), and therefore, he is entitled to recover the damages and other remedies enumerated therein.

72. Defendants' acts or omissions were actuated by actual malice and/or a willful and wanton disregard for the consequences suffered by Plaintiff and/or with knowledge of a high degree of probability of harm to the Plaintiff and reckless indifference to the consequences of their acts or omissions.

73. Compensatory damages alone will be insufficient to deter such conduct in the future. There needs to be a criminal referral to the United States Justice Department.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendants, containing the following relief:

a. A declaratory judgment that the actions, conduct, and practices of Defendants complained of herein violate the laws of the state of California;

b. An award of damages against Defendant, in an amount to be determined at Trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, loss of past and future income, wages, compensation, seniority, and other benefit of employment or retirement;

c. An award of damages against Defendants, in an amount to be determined at Trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to compensation for his mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

d. An award of punitive damages, in an amount to be determined at Trial;

e. Prejudgment interest on all amounts due;

f. An award of costs that Plaintiff has incurred in this action, including, but not limited to, expert witness fees, as well as Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law and,

g. Such other and further relief as the Court may deem just and proper.

## TRIAL BY JURY DEMANDED

Plaintiff hereby demand a trial by jury on all issues of facts and damages stated herein.

Dated: February 2, 2025
Inglewood, California

Christopher S Bennett

14

### PRESERVATION NOTICE

The term "you," or "yours" as used herein shall refer to you (the recipient of this letter), as well as to the respondents and any individuals responsible for the custody and control of the below information, including, but not limited to, to those individuals' administrative assistants, secretaries, agents, employees, information technology personnel and third-party vendors. From this point forward, you are directed to prevent "spoliation," defined as altering, changing, updating, destroying (even if periodically), editing, or deleting any information set forth hereafter. If you cause any such alteration, destruction, or change, direct it, or allow it to occur, you may be charged with discovery rule violations for which sanctions may imposed. Further, your failure to abide by this request could result in severe penalties against you and form the basis of legal claims for spoliation.

Electronically Stored information:

In terms of electronically stored information, you are directed to prevent any destructive, alternative or other change to any web pages, virtual profiles or identical (including, but not limited to, Facebook, Instagram, Pinterest, Twitter Tumblr, LinkedIn, Snapchat, Google Plus+, Flickr, Vine, About.me, ask.fm etc., or any other social media-based web profile or networking site account), emails, voice messages, test messages, instant messages or messaging systems recordings, digital recordings, media images and videos, temporary memory, memory sticks, portable memory devices, laptops or computers, CDs, DVDs, USB devices, databases, computer activity logs, internet browsing history (including cookies), network access and server activity logs, word processing files and file fragments, backup and archival files, imaging and facsimile files, electronic calendar and scheduling program files and file fragments as well as any other contract and relationship management data (e,g., Outlook), electronic spreadsheet files and file fragments, pertaining in in any way to this controversy of the parties or any potential witnesses. This includes a request that such information not be modified, altered, or deleted due to data compression or disk fragmentation (or other optimization procedures), which processes you are hereby directed to suspend until that data can be preserved copied and produced.

15

You are directed not to modify alter or delete or allow modifications, alterations, or deletions to be made to any electronically stored information. You are further directed to preserve all, and not to destroy any, passwords, decryption productions (including, if necessary, the software to decrypt the files), network access codes, manuals, tutorials, written instructions, decompression or reconstruction software, and any other information and things necessary to access, view and (if necessary) reconstruct the electronic data we will request through discovery.

Paper Information:

Regarding the paper information, you are directed to preserve any emails, videos, tests, memos, reports, documents, notes, correspondence, photographs investigative information or other documents about the controversy, parties, or witnesses. We expect to obtain several documents and other data from you through discovery, including test messages emails, photographs, and other information stored on computers, electronic devices and telephones.

Although we may bring a motion with a court for order-preserving documents and other data from destruction or alteration, your obligation to preserve documents and other data for discovery, in this case, arises independently from any order on such motion. Electronic documents and the storage media, including but not limited to telephones on which they reside, contain relevant, discoverable information beyond what may be found in printed documents. Therefore, even where a paper copy exists, we will likely seek all documents in their original, electronic form, along with metadata or information about those documents on the media. We will seek paper printouts of only those documents that contain unique information created after they were printed (e.g., paper documents containing handwriting, signatures, marginalia, drawings annotations highlighting, and redactions) and any paper documents for which no corresponding electronic files exist.

The laws and rules prohibiting the destruction of evidence apply to electronically stored information in the same manner they apply to other evidence. Due to its format, electronic information is quickly deleted, modified, or corrupted. Accordingly, the demand is made that you take every reasonable step to preserve this information until the final resolution of this matter. This may include but would not be limited to limited to, an obligation to discontinue all data destruction and backup tape recycling policies.

Concerning electronic data created after this Complaint's deliver date, relevant evidence should not be destroyed. You must take the steps necessary to avoid the destruction of such evidence.

Dated: February 2, 2025
Inglewood, California

Christopher S Bennett

## **DEMAND FOR INSURANCE COVERAGE**

Defendants are demanded to provide a complete copy of their applicable insurance policies and declaration sheets demonstrating coverage within thirty (30) days of service of this Complaint.

Dated: February 2, 2025
Inglewood, California

Christopher S Bennett

17